1

2

3

4

5

6

7

The Honorable Marsha J. Pechman

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

10

THE SECOND AMENDMENT
FOUNDATION; THE CITIZENS
COMMITTEE FOR THE RIGHT TO KEEP
AND BEAR ARMS; LIBERTY PARK
PRESS; MERRIL MAIL MARKETING;
CENTER FOR THE DEFENSE OF FREE
ENTERPRISE; SERVICE BUREAU
ASSOCIATION; and ALAN GOTTLIEB,

NO. 2:23-cv-00647-MJP

DEFENDANTS' MOTION TO
DISMISS

NOTE ON MOTION CALENDAR:
JULY 14, 2023

11

12

13

14

Plaintiffs,

15

v.

16

17

ROBERT FERGUSON, individually and in
his official capacity as Washington Attorney
General; JOSHUA STUDOR, individually
and in his official capacity as Washington
Assistant Attorney General, Consumer
Protection Division; THE ATTORNEY
GENERAL'S OFFICE FOR THE STATE
OF WASHINGTON; and JOHN DOES 1-10,

18

19

20

21

Defendants.

22

23

24

25

26

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................... 1

II.   BACKGROUND..................................................................................................... 2

    A.   Statutory Background .................................................................................... 2

    B.   Factual Background ....................................................................................... 3

    C.   This Action .................................................................................................... 4

III.  ARGUMENT ......................................................................................................... 4

    A.   Legal Standard .............................................................................................. 4

    B.   SAF Cannot Establish Ripeness or Standing ............................................... 5

        1.   SAF has not alleged an injury in fact ............................................... 5

        2.   SAF's suit is not prudentially ripe.................................................... 8

    C.   If SAF's Suit Is Justiciable, *Younger* Requires Abstention .................................... 10

        1.   There is an ongoing AGO-initiated investigation ............................ 11

        2.   The AGO investigation qualifies as a civil enforcement action...................... 12

        3.   The AGO investigation implicates important state interests............................ 13

        4.   SAF may raise federal challenges in state proceedings ................................... 13

        5.   SAF requests that the Court effectively enjoin the state investigation ........... 15

    D.   SAF's § 1983 Claims Fail for Multiple Reasons (Counts I-III) ........................... 15

        1.   AG Ferguson and Studor cannot be sued for damages in their official capacity.............................................................................................. 16

        2.   AG Ferguson and Studor are entitled to absolute immunity in their official capacity .................................................................................. 16

        3.   SAF fails to state a § 1983 claim against AG Ferguson and Studor and cannot overcome qualified immunity................................................ 19

           a.   The Complaint does not plead a constitutional violation ...................... 19

              (1)   Viewpoint discrimination............................................................... 19

              (2)   First Amendment retaliation............................................................ 20

DEFENDANTS' MOTION TO DISMISS --          i
NO. 2:23-cv-00647-MJP

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

(3)    Unreasonable search ........................................................... 21

     b.   AG Ferguson and Studor violated no clearly established law ................. 22

   4.   AG Ferguson did not personally participate in any of the complained-of activities ............................................................................................. 23

E.   SAF's State Law Claims Should Be Dismissed (Counts IV-V) ............................ 23

   1.   SAF failed to comply with RCW 4.92.100 ...................................... 23

   2.   The AGO has not consented to a federal forum ............................... 24

F.   The Court Should Award the State Attorney Fees ................................... 25

IV.   CONCLUSION ............................................................................. 25

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

I.     INTRODUCTION

As Washington's chief law enforcement officer, the Attorney General is charged with safeguarding the public interest by ensuring a fair marketplace and enforcing the laws governing nonprofits and charitable organizations. Accordingly, the Attorney General's Office (AGO) has broad statutory authority to investigate potential violations of state law governing trade practices. Roughly two years ago, the AGO began investigating Mr. Alan Gottlieb and the Second Amendment Foundation (SAF) for potential violations of Washington's laws governing nonprofit corporations and charitable organizations. The AGO investigation sought information from various Gottlieb-related entities that comprise the Plaintiffs in this case. Plaintiffs, collectively SAF,[1] plainly want to end that investigation, and now ask this Court to intervene. This is untenable. As our federal courts have repeatedly found in virtually identical circumstances, a federal lawsuit to enjoin an ongoing state investigation is improper and allowing it to proceed would significantly interfere with state sovereignty and the prerogatives of the Attorney General.

SAF's Amended Complaint (Complaint) (Dkt. #5) is long on unsupported theories but short on cognizable claims, and must be dismissed for numerous independent reasons. First, SAF does not allege a concrete and particularized injury in fact, a fundamental requirement for this Court's jurisdiction. Even if SAF could allege such an injury, this Court should decline to exercise jurisdiction because the lawsuit is not prudentially ripe. The AGO's investigation is ongoing, no final enforcement decision has been made, and the AGO would be substantially prejudiced by having to litigate issues overlapping with an active investigation.

Second, even if SAF's claims were justiciable, the *Younger* abstention doctrine requires this Court to abstain from exercising jurisdiction because the AGO's investigation is an ongoing civil enforcement proceeding implicating important state interests. While nothing prevents SAF

---

[1]For ease of reference, Plaintiffs are referred to collectively as "SAF."

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

from raising their federal claims in state court, any action by this Court would effectively enjoin the state proceeding in violation of *Younger*.

Third, the only federal claims before the Court are § 1983 claims against the two individual defendants. But the Attorney General and his staff are entitled to absolute quasi-judicial immunity for actions taken in their official capacities. Further, they would be entitled to qualified immunity even if absolute immunity did not apply, because the Complaint does not allege facts sufficient to plead that either individual violated SAF's constitutional rights, and neither individual defendant violated any clearly established law by investigating SAF's potential misconduct. Thus, the sole federal claims in this case must be dismissed.

Finally, SAF's state law claims are barred by the Eleventh Amendment because the AGO has not consented to a federal forum for the Public Records Act (PRA) dispute or tort claim. SAF also failed to comply with the jurisdictional requirements for asserting a tort claim against the State, which independently requires dismissal.

Ultimately, SAF seeks to derail the AGO's lawful investigation. SAF's grievances are not properly resolved in this Court, and the Complaint should be dismissed in its entirety.

## II.     BACKGROUND

### A.     Statutory Background

The AGO has broad statutory authority over nonprofit corporations and charitable organizations pursuant to the Charitable Solicitations Act, RCW 19.09 (CSA); the Washington Nonprofit Corporation Act, RCW 24.03A (NpCA); and the Consumer Protection Act, RCW 19.86 (CPA). AGO investigatory powers include the authority to issue pre-litigation civil investigative demands (CIDs) under the CPA and NpCA. RCW 19.86.110; RCW 24.03A.952. The CSA also grants the AGO authority to investigate "as the attorney general deems necessary to determine … whether any entity has violated … a provision of th[e CSA]." RCW 19.09.400(1).

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

But the AGO's powers are not boundless and they are subject to state court review. The CID statute requires the AGO to "[s]tate the statute …, the alleged violation of which is under investigation, and the general subject matter of the investigation[.]" RCW 19.86.110(2)(a).[2] The AGO cannot make any request that would be "unreasonable or improper if contained in a subpoena duces tecum, a request for answers to written interrogatories, or a request for deposition upon oral examination" nor demand the disclosure of "any documentary material" that is privileged. RCW 19.86.110(3)(a)-(b). The AGO is generally prohibited from disclosing CID responses—including documents, interrogatory answers, or testimony—absent consent or a court order, ensuring that investigatory materials remain confidential. *See* RCW 19.86.110(7). Further, CIDs are not self-executing, and require the AGO to file an enforcement petition if the recipient fails to cooperate. RCW 19.86.110(9). Most importantly, any CID recipient may contest the demand by filing a petition in superior court to modify or set aside the CID for "good cause[.]" RCW 19.86.110(8).

**B.    Factual Background**

Approximately two years ago, the AGO began investigating SAF for potential violations of Washington's laws governing nonprofit corporations and charitable organizations. Compl. ¶¶28, 32. The AGO—as permitted by statute—obtained court orders allowing it to issue confidential CIDs to third parties. *Id.* ¶¶29-31; *see* RCW 19.86.110(6).[3] After receiving those responses, the AGO served the Plaintiff entities with CIDs seeking information regarding their potential violations of the CPA and the CSA. Compl. ¶32. SAF alleges that they did "[n]ot understand[] the point of the investigation," *id.* ¶33, but they do not claim to have asked any state court to modify or set aside the CIDs. *See* RCW 19.86.110(8).

Instead, on January 23, 2023, counsel for SAF wrote to the individual Assistant Attorney General assigned to the matter, Joshua Studor, "demanding the investigation cease …." Compl.

---

[2] RCW 24.03A.952 generally provides the same procedural protections for CIDs issued under the NpCA.
[3] As SAF acknowledges, those orders merely "prohibit[ed] [the accountants] from notifying SAF or otherwise discussing CPD's demands." Compl. ¶29.

3

¶41, ¶9. Studor declined, as the "investigation, which is ongoing, has uncovered significant evidence that your clients have violated the law." Fraas Ex. A at 1.[4] Studor explained: "the evidence … demonstrates that several of your clients have violated the law for many years by soliciting charitable contributions and engaging in commercial fundraising without registering with the Secretary of State." *Id.* at 2. Studor reiterated, "our job is to follow the evidence and the law to determine if your clients violated the law" and "[w]e intend to do so." *Id.* at 1.

**C.     This Action**

Having decided not to seek relief from the CIDs in state court, SAF filed this federal action against Attorney General Ferguson, individually and in his official capacity, Studor, individually and in his official capacity, the AGO, and "John Does 1-10," asking this Court to terminate the State's investigation. The gravamen of SAF's complaint is their assertion the AGO began investigating SAF "because it disagrees with their political beliefs …." Compl. ¶43. The ostensible factual bases for this conclusion are AG Ferguson's "record against the Trump Administration," his "doubl[ing] the size of the Consumer Protection Division," his work on "[g]un control policy," and his defense of "gun control measures in court"—including defending multiple cases SAF brought over the last decade. *Id.* ¶¶16-17, 22, 25. Claiming that the investigation may chill their speech in support of gun rights, SAF requests the Court declare that the AGO's CIDs violated the U.S. Constitution; enjoin the AGO from "serving or enforcing further CIDs"; and require the AGO to "return or destroy all nonpublic documents" obtained via CID from SAF and related parties. *Id.* at 30.

**III.     ARGUMENT**

**A.     Legal Standard**

Where a party moves under Rule 12(b)(1), the Court accepts the truth of the plaintiff's factual allegations and evaluates whether they are sufficient to invoke federal jurisdiction, resolving the motion as it would under Rule 12(b)(6). *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22

---

[4]Fraas Ex. A is incorporated in the Complaint by reference. *See* Compl. ¶41.

1  (9th Cir. 2014). To survive, "a complaint must contain sufficient factual matter, accepted as true,

2  to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

3  (cleaned up). This requires "the plaintiff [to] plead[] factual content that allows the court to draw

4  the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

5        Here, SAF's Complaint fails on multiple grounds. It does not establish the threshold

6  requirements of ripeness and standing necessary for federal jurisdiction as to any claim. Further,

7  even were SAF's claims justiciable, the *Younger* abstention doctrine applies to attempts such as

8  this one to end run state enforcement actions in federal court and provides independent grounds

9  to decline to review those claims. SAF's sole federal claims, the § 1983 counts, are woefully

10  inadequate on their face because they are unsupported by specific factual allegations as to either

11  defendant, and the individual defendants are entitled to immunity in any event. The two

12  remaining state claims do not belong in this Court, and the entire action should be dismissed.

13  **B.**     **SAF Cannot Establish Ripeness or Standing**

14        Federal jurisdiction is limited to actual "cases" and "controversies." U.S. Const. art. III,

15  § 2. The doctrines of standing and ripeness reflect that constitutional requirement. *See Susan B.*

16  *Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014). SAF fails to allege any cognizable injury

17  meeting Article III's concreteness and particularity standards. SAF asks the Court to decide

18  issues that are contingent upon developments in an ongoing AGO investigation, making the

19  lawsuit also premature on prudential ripeness grounds. SAF will suffer no hardship if this Court

20  declines review—and certainly none that outweighs the substantial interference with

21  Washington state sovereignty they request.

22        **1.**     **SAF has not alleged an injury in fact**

23        Whether framed as a question of ripeness or standing, Article III requires federal courts

24  to exercise jurisdiction only over cases or controversies involving injuries in fact. *Twitter, Inc.*

25  *v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022). Thus, plaintiffs must show an injury from "an

26  invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). As the Ninth Circuit recently elaborated, "[a] concrete injury need not be tangible but 'must actually exist.'" *Id.* at 1175 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). SAF cannot establish injury in fact based on their vague insinuations that the AGO's investigation might chill their protected speech, that they have expended legal fees, or that third parties may decide not to do business with them someday.

A party's "naked assertion" that its speech was chilled is insufficient to establish injury. *Twitter*, 56 F.4th at 1174-75. The Ninth Circuit's recent decision in the remarkably analogous *Twitter v. Paxton* is instructive. There, Twitter sought to enjoin the Texas Attorney General from continuing an investigation into Twitter's content-moderation policies and from enforcing an investigatory CID. *Id.* at 1172. Twitter alleged that the investigation and the issuance of the CID were unlawful retaliation for speech protected by the First Amendment. *Id.* In affirming the trial court's dismissal, the Ninth Circuit held that Twitter's case was not ripe.[5] *Id.* at 1173. Specifically, Twitter's assertions that the CID and investigation "impeded" its ability to "freely make its own decisions," "chill[ed] Twitter's speech," and "forced [the company] to weigh the consequence[s] of a burdensome investigation" when making decisions, taken individually or collectively, did not satisfy Article III. *Id.* at 1175. To the contrary, Twitter's assertions were "vague" and referred only to "a general possibility of retaliation." *Id.* A Twitter employee's sworn testimony that he believed the existence of the CID would result in "significant diminishment of the willingness of Twitter employees to speak candidly and freely in internal content moderation decisions" was likewise insufficient: the "highly speculative" statements did not show that the "CID has actually chilled employees' speech or Twitter's content moderation decisions; the employee only claims that it would 'if the CID and investigation were allowed to proceed.'" *Id.*

---

[5] The Ninth Circuit initially affirmed dismissal of Twitter's case on prudential ripeness grounds. *Twitter, Inc. v. Paxton*, 26 F.4th 1119 (9th Cir. 2022). On reconsideration, it found Twitter's claims were not ripe on constitutional grounds. *Twitter*, 56 F.4th at 1173.

6

1    *Twitter* is dispositive here. The Complaint makes no concrete or particularized assertion

2    that the AGO's ongoing investigation has *actually* chilled SAF's speech. Instead, SAF speculates

3    that the AGO "*hopes to* chill [SAF] First Amendment activity," and that its "treatment of

4    Mr. Gottlieb is *designed to* … chill the activities of SAF and the other entities …." Compl. ¶¶43,

5    65 (emphasis added). This is far less concrete and particularized than even Twitter's inadequate

6    "naked assertion[s] that its speech has been chilled," which could not establish injury. *Twitter*,

7    56 F.4th at 1175. Moreover, unlike in *Twitter*, SAF does not claim that their speech *will be*

8    chilled if the AGO's investigation is allowed to proceed; indeed the only reasonable inference is

9    that SAF's political activity has continued full speed during the course of the investigation. *See*

10   Compl. ¶¶25, 32 (investigation known to SAF by May 2022, *Sullivan* suit filed June 2022).

11         Nor can SAF's other alleged injuries satisfy Article III. SAF claims they have been

12   "forced to expend hundreds of man hours and tens of thousands of dollars in legal fees

13   responding to [the AGO's] CIDs," and seek damages in addition to injunctive and declaratory

14   relief. *Id.* ¶¶33, 56. But every CID recipient has the right to seek to set aside the demand rather

15   than respond, RCW 19.86.110(8), and SAF did not do so. Further, the CIDs are not

16   self-enforcing. In the event of noncompliance, the AGO may file a petition to enforce, but only

17   the court can require compliance over a recipient's objections. RCW 19.86.110(9). SAF's

18   "injury" from responding to the CIDs was "self-inflicted," as they may have avoided such costs

19   through a state court challenge if the CIDs were improper. *Twitter*, 57 F.4th at 1176. Such

20   illusory injuries do not satisfy Article III.

21         Finally, SAF's alleged injuries stemming from CIDs served on third parties are wholesale

22   speculation. SAF states that the AGO served CIDs on an "array" of SAF's vendors, including

23   SAF's accountants, webhost, and a utility company, around June 2021 and in the following

24   months. Compl. ¶¶29-30. Yet, two years later, SAF claims only that "[v]endors who have

25

26

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP                              7              ATTORNEY GENERAL OF WASHINGTON
                                                                        Complex Litigation Division
                                                                        800 Fifth Avenue, Suite 2000
                                                                        Seattle, WA  98104-3188
                                                                           (206) 464-7744

1   received CIDs *may* cease to do business with plaintiffs[.]"[6] *Id.* ¶56. Surely, any third party

2   motivated to cut ties with SAF would have done so by now. This alleged hypothetical injury

3   does not meet the strictures of the injury-in-fact requirement.

4       Dismissal under Rule 12(b)(1) is required.

5       **2.    SAF's suit is not prudentially ripe**

6       Separate from Article III considerations, Ninth Circuit courts may decline to exercise

7   jurisdiction for prudential ripeness reasons. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d

8   1134, 1142 (9th Cir. 2000); *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808

9   (2003). Evaluating prudential ripeness, courts consider two factors: (1) "the fitness of the issues

10  for judicial decision," and (2) "the hardship to the parties of withholding court consideration."

11  *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021) (citation omitted),

12  *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1988)). Here, prudential

13  ripeness makes clear that judicial review is premature.

14      As to the first factor, "[a] claim is fit for decision if the issues raised are primarily legal,

15  do not require further factual development, and the challenged action is final." *Stormans, Inc. v.*

16  *Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (citation omitted). SAF challenges an ongoing

17  AGO investigation and, by doing so, asks the Court to decide issues of fact at a time when the

18  AGO has not yet made a final enforcement determination. SAF's central allegation is that the

19  AGO's investigation is "baseless and motivated by sheer political animus[.]" Compl. ¶41. Far

20  from a claim that requires no factual development, SAF asks the Court to infer such egregious

21  bias from their own contentions that they do "[n]ot understand[] the point of the investigation"

22  and are "[a]t a loss regarding CPD's motives," or from an Assistant Attorney General's refusal

23  "to provide any instructions on how they could bring their conduct into compliance with the

24  law." *Id.* ¶¶33, 35, 42. These assertions do not meet minimum pleading requirements for "factual

---

25      [6]SAF suggests that a "gag order" accompanying the CIDs to SAF's accountants "had the practical effect

26  of totally preventing SAF's accountants from speaking with SAF[.]" *Id.* ¶29. But such court-ordered confidentiality
provisions are authorized by statute and are not a legally cognizable injury. RCW 19.86.110(6).

---

DEFENDANTS' MOTION TO DISMISS --        8        ATTORNEY GENERAL OF WASHINGTON
NO. 2:23-cv-00647-MJP                          Complex Litigation Division
                                          800 Fifth Avenue, Suite 2000
                                          Seattle, WA  98104-3188
                                          (206) 464-7744

1    content that allows the court to draw the reasonable inference" of misconduct, *Iqbal*, 556 U.S.

2    at 678, and litigating such fact issues would require the AGO to reveal and justify its ongoing

3    decision-making or suffer the disadvantage of "being forced to defend [the investigation] in a

4    vacuum …." *Thomas*, 220 F.3d at 1142.

5         Moreover, because the action SAF challenges is not final, their requested relief rests on

6    contingencies. *See Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000)

7    (case was not ripe for review because "[a]n investigation, even one conducted with an eye to

8    enforcement, is quintessentially non-final as a form of agency action"). SAF asks the Court to

9    declare an ongoing state investigation unconstitutional and enjoin hypothetical future CIDs and

10   enforcement actions that may never come to pass. The Court should find SAF's attempts to end

11   run an ongoing AGO investigation subject to state judicial oversight unfit for federal judicial

12   review.

13        To meet the second requirement, plaintiffs must show that withholding judicial review

14   would lead to "[d]irect and immediate hardship" that will require "an immediate and significant

15   change in the plaintiff['s] conduct of their affairs with serious penalties attached to

16   noncompliance." *Stormans*, 586 F.3d at 1126 (internal quotation marks and citations omitted).

17   But, here, SAF may seek to modify or set aside any new CIDs as provided in RCW 19.86.110(8),

18   including for the reasons raised in the Complaint. And in the event the AGO moves to enforce

19   compliance with a CID, SAF would have another opportunity to raise their arguments in that

20   action. RCW 19.86.110(9). Finally, if the AGO files an enforcement action against SAF, they

21   can litigate their alleged grievances in that lawsuit. Indeed, the case SAF features in their

22   Complaint demonstrates this point. *Compare TVI Inc. v. Ferguson*, No. C17-1845 RSM, 2018

23   WL 1610220, at *4 (W.D. Wash. Apr. 3, 2018) (dismissing federal suit challenging the AGO's

24   CPA investigation on constitutional grounds) with *Washington v. TVI, Inc.*, 524 P.3d 622, 627

25   (Wash. 2023) (state court merits decision on CPA claims).

26

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1      Finally, courts also consider the hardship to the defendant and the court from litigating

2   unripe claims. *See, e.g.*, *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1129 (9th Cir.

3   2009); *Thomas*, 220 F.3d at 1142. Here, the AGO would be severely prejudiced were SAF's suit

4   to proceed. The lawsuit seeks to force the AGO to justify an ongoing investigation, and to litigate

5   issues substantially overlapping with the merits of the investigation when it has not made a final

6   enforcement determination. This represents a significant interference with Washington state

7   sovereignty and the prerogatives of the Attorney General, as further demonstrated by the

8   *Younger* analysis, *infra*. Allowing it to proceed will make every AGO investigation susceptible

9   to collateral attack in federal court. That is untenable, and the Court should dismiss.

10  **C.     If SAF's Suit Is Justiciable, *Younger* Requires Abstention**

11      Even were SAF's claims justiciable, the Court should nevertheless abstain under *Younger*

12  *v. Harris*, 401 U.S. 37 (1971), and its progeny. The *Younger* doctrine requires federal courts to

13  abstain from hearing federal claims for relief from particular state proceedings, including civil

14  enforcement proceedings. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (citing

15  *Younger*, 401 U.S. at 43-44). This reflects comity and federalism interests, ensuring that federal

16  courts do not interfere with ongoing state proceedings. *See Younger*, 401 U.S. at 43 (recognizing

17  "a desire to permit state courts to try state cases free from interference by federal courts");

18  *see also Trump v. Vance*, 140 S. Ct. 2412, 2421 (2020) (noting the doctrine's "core justification"

19  is to prevent friction between state and federal government). Whether *Younger* abstention is

20  required depends on whether the proceeding falls within the general class of state enforcement

21  actions, not the specific allegations in a particular case. *See Bristol-Myers Squibb Co. v. Connors*,

22  979 F.3d 732, 737-38 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2796 (2021) (rejecting plaintiff's

23  invitation to probe into "the State's true motive in bringing the case," explaining, "[a]

24  federal-court inquiry into why a state attorney general chose to pursue a particular case, or into

25  the thoroughness of the State's pre-filing investigation, would be entirely at odds with *Younger*'s

26

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

purpose of leaving state governments 'free to perform their separate functions in their separate ways.'") (citation omitted).

More specifically, "*Younger* abstention applies to state civil proceedings when the proceeding: (1) is ongoing, (2) constitutes a quasi-criminal enforcement action, (3) implicates an important state interest, and (4) allows litigants to raise a federal challenge." *Citizens for Free Speech, LLC v. County of Alameda*, 953 F.3d 655, 657 (9th Cir. 2020) (citation omitted). Here, because each *Younger* requirement is met and action by this Court would effectively enjoin the AGO's ongoing investigation, the Court must decline SAF's invitation to dissect the AGO's putative motives.

### 1.     There is an ongoing AGO-initiated investigation

*Younger* applies to ongoing state civil enforcement actions, including investigations. As the Ninth Circuit made clear in *Citizens for Free Speech*, "civil enforcement proceedings initiated by the state 'to sanction the federal plaintiff … for some wrongful act,' *including investigations* 'often culminating in the filing of a formal complaint or charges,'" meet the "ongoing proceeding" requirement for *Younger* abstention. 953 F.3d at 657 (emphasis added) (quoting *Sprint*, 571 U.S. at 79-80). Accordingly, the AGO's enforcement-based investigation into SAF's conduct qualifies as an "ongoing proceeding" for purposes of the first *Younger* requirement. *See, e.g.*, *San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008) ("The state-initiated proceeding in this case-the Elections Commission's investigation of Plaintiffs' activities-is ongoing."); *Seattle Pac. Univ. v. Ferguson*, No. 3:22-cv-05540-RJB (W.D. Wash. Oct. 26, 2022), Order and Hr'g Tr. at 37:21-25 (Fraas Exs. B-C) (relying on *Citizens for Free Speech* and concluding that "an ongoing investigation is enough to trigger *Younger* concerns"); *Alsager v. Bd. of Osteopathic Med. & Surgery*, 945 F. Supp. 2d 1190, 1195 (W.D. Wash. 2013) ("The Board's investigation of Plaintiff's conduct constitutes a state initiated 'ongoing proceeding' for the purposes of *Younger* abstention.") (citation omitted). *But see Lakeview Fin., Inc. v. Dep't of Fin. Insts. by and Through*

*Clark*, No. 3:21-cv-05267-RJB, 2021 WL 2530727, at *2-3 (W.D. Wash. June 21, 2021) (reaching different conclusion for a different statutory scheme based on out-of-circuit authority). The AGO's investigation plainly satisfies the ongoing proceeding factor.

### 2. The AGO investigation qualifies as a civil enforcement action

Second, the AGO's ongoing investigation of SAF for violations of the State's CPA falls squarely within the type of civil enforcement proceeding to which *Younger* applies. *See Sprint*, 571 U.S. at 70 (limiting *Younger* abstention to three categories of cases, including "certain civil enforcement proceedings") (quotations omitted). In *Sprint*, the Supreme Court explained that *Younger* applies to those civil enforcement proceedings "akin to a criminal prosecution" in "important respects." *Id.* at 79 (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). Such actions are: (1) "characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act"; (2) "a state actor is routinely a party to the state proceeding and often initiates the action"; (3) "[i]nvestigations are commonly involved"; and (4) the investigation "often culminat[es] in the filing of a formal complaint or charges." *Id.* at 79-80. These factors are easily satisfied here.

Actions by an Attorney General to enforce the CPA are quasi-criminal actions for purposes of *Younger*. *Williams v. Washington*, 554 F.2d 369, 370 (9th Cir. 1977) (concluding that Washington's consumer protection action was "like the quasi-criminal nuisance action in *Huffman*, in which 'the State's interest [] is likely to be every bit as great as it would be were this a criminal proceeding.'" (quoting *Huffman*, 420 U.S. at 604). As the Court explained in *Williams*, in a consumer protection enforcement action, the AGO "is acting to protect its consumers from unfair and deceptive trade practices by prosecuting and penalizing those who violate the Consumer Protection Act." *Id.* at 370. Because the AGO's "investigation could lead to enforcement by the state," the second *Younger* factor also is met. *See Seattle Pac. Univ.*, Order and Hr'g Tr. at 38:1-7 (Fraas Exs. B-C) (concluding that "th[e] possibility [of state enforcement] turns that investigation into a quasi-criminal enforcement action for *Younger* concerns");

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*see also TVI*, 2018 WL 1610220, at *4 (dismissing § 1983 suit against the Washington Attorney General on *Younger* grounds; concluding the State's CPA and CSA-based action "squarely falls under the category of 'state civil proceedings that are akin to criminal prosecutions'").

### 3. The AGO investigation implicates important state interests

Third, "[p]roceedings necessary for the vindication of important state policies… evidence the state's substantial interest in the litigation." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Undisputedly, the AGO's CPA, CSA, and NpCA investigations implicate important state interests. As the Ninth Circuit has recognized, Washington has a "governmental interest in enforcing its consumer protection act" as it enables the state "to protect its consumers from unfair and deceptive trade practices …." *Williams*, 554 F.2d at 370; *see also TVI*, 2018 WL 1610220, at *4 (finding Washington Attorney General's action under the CPA implicated important state interests for *Younger* purposes); *Washington v. CLA Est. Servs., Inc.*, No. C18-480-MJP, 2018 WL 2057903, at *1 (W.D. Wash. May 3, 2018) (recognizing the State's "quasi-sovereign interest in guaranteeing an honest marketplace and the economic welfare of its citizenry" through CPA enforcement actions). The State likewise has an important interest in ensuring that charitable corporations, non-profits, and those leading such organizations operate within the bounds of the law. *See generally Washington v. Taylor*, 362 P.2d 247 (Wash. 1961); *In re Breast Cancer Prevention Fund*, 574 B.R. 193 (Bankr. W.D. Wash. 2017). The AGO's ongoing investigation implicates the important state interest of addressing potential violations of the CPA, NpCA, and the CSA. *See* Fraas Ex. A. Accordingly, the third element of *Younger* abstention is satisfied.

### 4. SAF may raise federal challenges in state proceedings

Fourth, SAF has had and will continue to have ample opportunities to raise their federal constitutional challenges before the state courts. Where, as here, "a litigant has not attempted to present [its] federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the

contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). While SAF declined to move to have the AGO's CIDs modified or set aside on the grounds they assert here, they have not waived those arguments as to future CIDs or a future enforcement action. *See* RCW 19.86.110(8)-(9).

"*Younger* abstention routinely applies even when important rights are at stake," including alleged constitutional violations. *Bristol-Myers*, 979 F.3d at 738. In *Younger*, the Court held "the existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Id.* (quoting *Younger*, 401 U.S. at 51). As the *Younger* court observed, while alleged First Amendment chill could be cured "by an injunction that would prohibit any prosecution," that would lead to the states being "stripped of all power to prosecute even the socially dangerous and constitutionally unprotected conduct…." 401 U.S. at 51.

In the present circumstances, it is "abundantly clear" that SAF had an "opportunity to present [their] federal claims to a competent state tribunal" and, consequently, "no more is required to invoke *Younger* abstention." *J.&W. Seligman & Co. Inc. v. Spitzer*, No. 05 Civ. 7781(KMW), 2007 WL 2822208, at *6-7 (S.D.N.Y. Sept. 27, 2007) (quoting *Juidice v. Vail*, 430 U.S. 327, 337 (1977)) (refusing to enjoin investigation by the New York State Attorney General where "[t]here is no question Plaintiffs had the opportunity to file a motion to quash the subpoenas in New York Supreme Court, which would have allowed for adequate judicial review").

Allowing the present lawsuit to proceed past the motion to dismiss phase—let alone enjoining the AGO's ongoing investigation—would offend *Younger*'s core purpose of protecting comity between the states and federal government. *See Middlesex*, 457 U.S. at 431 ("Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights."). Accordingly, the fourth *Younger* requirement is satisfied.

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**5.     SAF requests that the Court effectively enjoin the state investigation**

Finally, the Court must consider "whether the federal action would effectively enjoin the state proceedings." *Citizens for Free Speech*, 953 F.3d at 657. The Ninth Circuit derived this final element from the recognition that "interference is undoubtedly the reason for *Younger* restraint, or the end result to be avoided." *Gilbertson v. Albright*, 381 F.3d 965, 976-77 (9th Cir. 2004). Direct interference is not required, only "that which would have the same practical effect on the state proceeding as a formal injunction." *Id.* at 977-78. The analysis applies equally to requests for declaratory relief as for injunctive relief, because "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." *Samuels v. Mackell*, 401 U.S. 66, 72 (1971).

Here, SAF's requests for relief are aimed at one goal—halting the State's civil enforcement investigation permanently. This is exactly the sort of demand that "is at the core of the comity concern that animates *Younger*." *Gilbertson*, 381 F.3d at 976. Because the relief sought would interfere with the AGO's ongoing investigation and impair its ability to enforce its consumer protection, charitable solicitations, and non-profit-related statutes, the final *Younger* requirement is fully satisfied. *See, e.g.*, *Seattle Pac. Univ.*, Order and Hr'g Tr. at 38:17-20 (Fraas Exs. B-C) (abstaining under *Younger* where "[t]he injunctions requested … would halt or enjoin the state proceeding in attempting to investigate [statutory] violations against the plaintiff"); *Wash. Ass'n of Realtors v. Wash. State Pub. Disclosure Comm'n*, No. C09-5030RJB, 2009 WL 10726078, at *8 (W.D. Wash. May 19, 2009) (abstaining where "federal court action would enjoin the proceeding or have the practical effect of doing so") (cleaned up).

**D.     SAF's § 1983 Claims Fail for Multiple Reasons (Counts I-III)**

Assuming, *arguendo*, that Article III confers jurisdiction, SAF's claims are prudentially ripe, and *Younger* abstention does not apply, there are numerous other reasons that SAF's § 1983

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

claims against the two individual defendants must be dismissed. Section 1983 does not allow damage claims against AG Ferguson and his Assistant Attorneys General in their official capacity, and they would be entitled to absolute immunity even if it did. Further, SAF has not even attempted to plead a viable § 1983 claim against either defendant in their personal capacity, and such claims are barred by qualified immunity.

**1.    AG Ferguson and Studor cannot be sued for damages in their official capacity**

Absent waiver by the State or valid congressional override, a suit against the State or one of its agencies is barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Eleventh Amendment's bar applies when state officials are sued for damages in their official capacity, as AG Ferguson and Studor are here. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Similarly, state officials sued in their official capacity are not "persons" under § 1983 and cannot be sued for monetary damages under that provision. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, SAF's official-capacity damages claims against AG Ferguson and Studor fail *ab initio*.

**2.    AG Ferguson and Studor are entitled to absolute immunity in their official capacity**

Additionally, immunity bars these claims, as AG Ferguson and Studor have absolute immunity from suit for actions taken in their prosecutorial or quasi-judicial official capacity. Absolute prosecutorial or "quasi-judicial" immunity is based on considerations similar to those that underlie the absolute immunity judges enjoy for their judicial acts, including the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976). Government officials whose duties include determining whether to commence enforcement proceedings must be able to make such decisions free from intimidation or

harassment and are entitled to absolute immunity for such decisions. *Butz v. Economou*, 438 U.S. 478, 515 (1978).

Absolute immunity applies to a "government attorney's initiation and handling of civil litigation in a state or federal court." *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991). "Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing, absolute immunity is 'necessary to assure that … advocates … can perform their respective functions without harassment or intimidation.'" *Id*. at 837 (quoting *Butz*, 438 U.S. at 512).

Absolute immunity extends to functions in which a government attorney acts as an "advocate for the State," even if such functions "involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). These actions "need not relate to a particular trial and may even be administrative in nature, yet are connected to the trial process and 'necessarily require legal knowledge and the exercise of related discretion.'" *Id*. (citation omitted).

Absolute prosecutorial immunity has been found for "the lawyerly functions of organizing and analyzing evidence and law, and then presenting evidence and analysis to the courts and grand juries on behalf of the government; they also include internal decisions and processes that determine how those functions will be carried out." *Id*. at 913; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.").

In accordance with these well-established principles, AG Ferguson's and Studor's duties as advocates for the State, including investigating to decide whether to initiate an enforcement action and preparing to present evidence in a judicial proceeding, are entitled to absolute immunity. The AGO has statutory authority to serve CIDs requiring the recipient to produce

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP                          17          ATTORNEY GENERAL OF WASHINGTON
                                                                   Complex Litigation Division
                                                                   800 Fifth Avenue, Suite 2000
                                                                   Seattle, WA  98104-3188
                                                                   (206) 464-7744

documentary material, answer interrogatories, or give oral testimony if the AGO believes such information is relevant to the subject matter of an investigation into a possible legal violation—an act indisputably connected to the trial process. Indeed, the issuance of a CID is a core duty of the Attorney General in his "role as advocate for the State," though it is "preliminary to the initiation of a prosecution" and occurs "apart from the courtroom." *Lacey*, 693 F.3d at 929 (quoting *Imbler*, 424 U.S. at 431 & n.33). The procedural safeguards in state law give enforcement targets "ample opportunity to challenge the legality" of a CID and "provide sufficient checks on agency zeal[.]" *Butz*, 438 U.S. at 515-16; *see supra* Section II.A.

SAF's complaint is a near-perfect illustration of the precise danger that courts envision when explaining why absolute immunity is necessary. SAF ascribes a variety of malicious motives and unconstitutional animus to AG Ferguson and Studor without any evidence that these officials' actions were improper, while failing to challenge any CID through the process provided by state law. If suits such as this one are permitted to proceed, the AGO will be subjected to them "with some frequency, for a defendant often will transform … resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Imbler*, 424 U.S. at 425; *see also Butz*, 438 U.S. at 512 (explaining that "[t]he loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus," and "[a]bsolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation"). Absolute immunity is necessary to protect the Attorney General and his staff from "harassing litigation that would divert [their] time and attention from [their] official duties" and to "enabl[e them] to exercise independent judgment when 'deciding which suits to bring and in conducting them in court.'" *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997) (citation omitted). It bars SAF's § 1983 claims against AG Ferguson and Studor in their official capacities.

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

### 3.    SAF fails to state a § 1983 claim against AG Ferguson and Studor and cannot overcome qualified immunity

Likewise, SAF has failed to plead any facts that would allow their individual-capacity damages claims to proceed in the face of qualified immunity. A public official sued in an individual capacity may assert qualified immunity as a complete defense. *City & Cnty. of S.F., Cal. v. Sheehan*, 575 U.S. 600, 611 (2015). The doctrine "protects government officials from liability for civil damages …." *Wood v. Moss*, 574 U.S. 744, 757 (2014); *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, a government official is immune from a damages suit unless the plaintiff demonstrates: (1) "a violation of a constitutional right," and (2) that the right "was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* at 232 (citation omitted). Here, SAF's Complaint fails both prongs.

### a.    The Complaint does not plead a constitutional violation

SAF fails to allege any facts showing how the AGO's investigation into potential violations of the CPA, CSA, and NpCA constitutes viewpoint discrimination, retaliation, or an unreasonable search in violation of the U.S. Constitution.

### (1)    Viewpoint discrimination

"Viewpoint discrimination occurs 'when the government prohibits speech by particular speakers, thereby suppressing a particular view about a subject.'" *Menotti v. City of Seattle*, 409 F.3d 1113, 1130 n.30 (9th Cir. 2005) (quoting *Giebel v. Sylvester*, 244 F.3d 1182, 1188 (9th Cir. 2001)); *see also Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("Viewpoint discrimination is … an egregious form of content discrimination."). Here, SAF's viewpoint discrimination claim fails at the outset because the Complaint does not allege

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

that AG Ferguson or Studor prohibited or suppressed any of SAF's speech. Instead, SAF has continued to file lawsuits against the AGO challenging gun control measures, including a new case filed just one week before bringing this action, *see* Compl. ¶25; *infra* at III.B.1, and have "released public statements criticizing Mr. Ferguson's views on gun control and the legislation he champions." Compl. ¶26.[7] Because the Complaint fails to allege facts from which this Court could infer that AG Ferguson or Studor prohibited or suppressed SAF's speech, SAF has failed to state a claim for viewpoint discrimination.

### (2)    First Amendment retaliation

"To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (citations omitted).

Here, SAF alleges that they engaged in the constitutionally protected activity of filing lawsuits. *See* Compl. ¶25 (listing cases), ¶52. But fatal to this claim is that SAF does not plead facts from which the Court could infer that they have been chilled from engaging in this protected activity. Far from it. SAF has continued to file Second Amendment-related litigation against the AGO, including a challenge to Washington's "assault weapon" ban just two months ago. *See Hartford v. Ferguson*, No. 3:23-cv-05364-RJB, ---F. Supp. 3d---, 2023 WL 3836230 (W.D. Wash. June 6, 2023) (filed April 25, 2023); *Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE, ---F. Supp. 3d---, 2022 WL 13969427 (W.D. Wash. Oct. 24, 2022) (filed one month after issuance of CID to SAF). Nor would the issuance of a CID chill the affirmative litigation of a person of

---

[7]These criticisms have continued throughout the AGO's investigation. *See, e.g.*, Press Release, SAF, Second Amendment Foundation Sues Washington Over Semi-Auto Ban (Apr. 25, 2023), https://www.saf.org/second-amendment-foundation-sues-washington-over-semi-auto-ban/.

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP                                    20                  ATTORNEY GENERAL OF WASHINGTON
                                                                                      Complex Litigation Division
                                                                                      800 Fifth Avenue, Suite 2000
                                                                                      Seattle, WA  98104-3188
                                                                                      (206) 464-7744

1  ordinary firmness, given a CID recipient's ability to seek judicial review of the CID and have it

2  set aside if wrongfully issued. *See* RCW 19.86.110(8)-(9).

3      Further, SAF does not allege facts establishing "a nexus" between the issuance of the

4  CIDs and SAF's filing of lawsuits. Given the "presumption that a prosecutor has legitimate

5  grounds for the action he takes," *Hartman v. Moore*, 547 U.S. 250, 263 (2006), and the "obvious

6  alternative explanation" for the AGO's investigation, *Iqbal*, 556 U.S. at 682—i.e., the AGO has

7  reason to believe SAF may have violated the CSA and CPA as stated on its CIDs

8  (*see* Compl. ¶32)—SAF's self-serving and conclusory assertion that they are not aware of

9  "evidence of any legitimate reason for the investigation" fails to state a claim. Compl. ¶57;

10 *see Iqbal*, 556 U.S. at 682 (finding "the purposeful, invidious discrimination respondent asks us

11 to infer" was "not a plausible conclusion").

12              **(3)      Unreasonable search**

13     It is well settled that a CID comports with the Fourth Amendment where: (1) "the inquiry

14 is within the authority of the agency," (2) "the demand is not too indefinite," and (3) "the

15 information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652

16 (1950); *see also Steele v. Washington ex rel. Gorton*, 537 P.2d 782, 788 (Wash. 1975). Here, the

17 Complaint does not allege that any CID failed to meet these legal requirements, but instead relies

18 on the vague assertion that the AGO's investigation is biased. Compl. ¶61. But such a conclusory

19 allegation fails to state a claim under the Fourth Amendment.

20     The AGO's statutory authority to issue the CID is plain. *See* RCW 19.86.110(1). The

21 Attorney General is not required to allege or prove a CPA violation when issuing a CID. *Id.* Nor

22 does a "probable cause" standard apply. *See Steele*, 537 P.2d at 788-89. Second, a CID is not

23 impermissibly indefinite where there is "no general or undiscriminating request for all business

24 records" and the types of records sought are "explained with reasonable clarity." *Id.* at 788.

25 Further, SAF has not raised any doubt that the records sought by the AGO's CIDs were

26

"reasonably relevant to the investigation of unfair and deceptive practices[.]" *Id.* Finally, SAF has not availed themselves of any of the procedural CID protections. *See id.* at 788-89 (discussing how a CID could be set aside in the event it was challenged as being "arbitrarily serve[d]"); RCW 19.86.110(8)-(9). Because SAF has identified no facial shortcomings of the CIDs and pursued none of the judicial protections available to them under state law, they fail to state a claim for a Fourth Amendment violation.

### b.   AG Ferguson and Studor violated no clearly established law

Even if SAF could link AG Ferguson's or Studor's conduct to a constitutional violation with the required specificity (they cannot), AG Ferguson and Studor would still be entitled to qualified immunity because they did not violate clearly established law. *See Felarca v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018) (to determine whether a right was clearly established, the court is to determine whether the law was "clear enough that *every* reasonable official would know he or she was violating the plaintiff's rights.") (cleaned up).

Here, the AGO has authority to investigate whether charitable entities comply with applicable state requirements and to issue CIDs in aid of that investigation. *See supra* 3-4. The AGO is also afforded latitude in "embarking upon investigations without absolute assurances that violations of the [CPA] have occurred." *Steele*, 537 P.2d at 789. There is no "clearly established law" holding that a government agency's service of non-self-executing CIDs that are subject to judicial oversight is itself unlawful viewpoint discrimination, retaliation, or an unreasonable search in violation of the Constitution. To the contrary, such procedures are widely accepted as the most effective and fair manner in which to gather the information necessary, from an adverse party, to investigate and prepare a case. Likewise, there is no "clearly established law" that government agencies are required to preview investigative findings, legal theories, or factual allegations before deciding to file an enforcement action. The alleged conduct here— issuing CIDs that are subject to judicial challenge and refusing to disclose the AGO's legal theories to an investigation's target—do not "violate clearly established statutory or

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (cleaned up). Accordingly, the § 1983 personal capacity claims should be dismissed with prejudice.

### 4. AG Ferguson did not personally participate in any of the complained-of activities

Finally, Counts I-III contain no factual allegations with respect to *any* investigative action taken by AG Ferguson personally. *See* Compl. ¶¶21-25. There are no allegations that AG Ferguson directly participated in the AGO's ongoing investigation, either by issuing the CIDs or by declining to disclose the investigation's progress. *See id.* ¶¶28-44. To state a claim under § 1983, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (defendant cannot be held liable in a § 1983 action absent personal participation in the complained-of activity). Further, "[t]here is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Accordingly, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant" in the deprivation alleged. *Id.* For this additional and independent reason, the individual capacity claims against AG Ferguson should be dismissed with prejudice.

### E. SAF's State Law Claims Should Be Dismissed (Counts IV-V)

Once this Court dismisses SAF's federal law claims, it should decline to consider the remaining state law claims. *See Artis v. District of Columbia*, 138 S. Ct. 594, 597-98 (2018) ("When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims."). In addition to these prudential concerns, other independent grounds require their dismissal.

### 1. SAF failed to comply with RCW 4.92.100

While the Washington legislature has waived sovereign immunity for damages arising out of tortious conduct, *see* RCW 4.92.090, a plaintiff must submit a tort claim form to the

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Office of Risk Management prior to suing the State for damages. *See* RCW 4.92.100(1) ("All claims against the state, or against the state's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct, must be presented to the office of risk management."). Compliance with RCW 4.92.100 is also required for individual claims filed against state employees for actions taken in the scope of their employment. *See Hanson v. Carmona*, 525 P.3d 940, 944 (Wash. 2023) (discussing *Hardesty v. Stenchever*, 917 P.2d 577, 578 (Wash. 1996)). Failure to comply with RCW 4.92.100 deprives the courts of subject matter jurisdiction. *Schoonover v. State*, 64 P.3d 677, 680 (Wash. 2003); *see also Hyde v. Univ. of Wash. Med. Ctr.*, 347 P.3d 918, 920 (Wash. 2015) ("Dismissal is the proper remedy for failure to comply with these tort claim filing requirements.").

SAF does not allege compliance with RCW 4.92.100 as a predicate to their claim. Assuming they cannot plead compliance, this claim must be dismissed. *See Hust v. Wyoming*, 372 F. App'x 708, 710 (9th Cir. 2010) (affirming dismissal of Washington tort claims for failure to comply with RCW 4.92.100). Nor have Defendants consented to a federal forum for this claim. *See Pennhurst*, 465 U.S. at 908.

## 2. The AGO has not consented to a federal forum

The Eleventh Amendment likewise bars SAF's PRA claim, as "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst*, 465 U.S. at 908 (citation omitted). "The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature." *Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991). Although 28 U.S.C. § 1367(a) provides for supplemental jurisdiction over state-law claims, "§ 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants." *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 542 (2002). Here, the AGO has not consented to a federal forum for SAF's state PRA claim, requiring dismissal of SAF's PRA claim. *See, e.g.*, *West v. Johnson*, No. C08-5741RJB, 2009 WL

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1543493, at *4 (W.D. Wash. June 2, 2009) (dismissing PRA claim where state agency had not consented to a federal forum for the claim).

**F.      The Court Should Award the State Attorney Fees**

42 U.S.C. § 1988(b) authorizes the Court to award the prevailing party in an action brought pursuant to § 1983 its reasonable attorney fees and costs where the action is "unreasonable, frivolous, meritless, or vexatious." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994) (quoting *Roberts v. Spalding*, 783 F.2d 867, 874 (9th Cir. 1986)). An action is frivolous when the result is obvious or the plaintiff's claims are wholly without merit. *Id.* Because SAF's claims are wholly without merit, the State respectfully requests its reasonable attorney fees and costs.

## IV.      CONCLUSION

Defendants asks the Court to grant their motion to dismiss and award the State its fees for having to defend this action.

DATED this 12th day of June 2023.

<div style="margin-left:40%">

ROBERT W. FERGUSON
Attorney General

*/s/ Lauryn K. Fraas*
LAURYN K. FRAAS, WSBA #53238
KENDALL SCOTT COWLES, WSBA #57919
Assistant Attorneys General
CYNTHIA L. ALEXANDER, WSBA #46019
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744
Lauryn.Fraas@atg.wa.gov
Kendall.ScottCowles@atg.wa.gov
Cynthia.Alexander@atg.wa.gov
*Attorneys for Defendants Robert Ferguson,*
*Joshua Studor, and the Attorney General's Office*
*for the State of Washington*

I certify that this memorandum contains 8,350 words, in compliance with the Local Civil Rules.

</div>

DEFENDANTS' MOTION TO DISMISS --
NO. 2:23-cv-00647-MJP

25

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744